```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


DEANA L. ZELENKA, in the name   :
of the UNITED STATES OF         :    HONORABLE JOSEPH E. IRENAS
AMERICA,                        :
         Plaintiff-Relator,     :    CIVIL ACTION NO. 05-584 (JEI)
                                :
    v.                          :
                                :            OPINION
NFI INDUSTRIES, INC., and       :
HONEYWELL INTERNATIONAL, INC.,  :
                                :
         Defendants.            :
```

**APPEARANCES:**

BEGELMAN & ORLOW, P.C.
By: Marc M. Orlow, Esq.
Ross Begelman, Esq.
Cherry Hill Professional Building
411 Route 70 East, Suite 245
Cherry Hill, New Jersey 08034
     Counsel for Plaintiff

LOUGHRY & LINDSAY, LLC
By: Justin T. Loughry, Esq.
330 Market Street
Camden, New Jersey 08102
     Counsel for Defendant NFI Industries, Inc.

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE
By: Peter J. Torcicollo, Esq.
One Riverfront Plaza
Newark, New Jersey 07152-5497

JENNER & BLOCK LLP
By: Joseph P. Covington, Esq.
Julie M. Carpenter, Esq.
Kali N. Bracey, Esq.
Richard W. Arnholt, Esq.
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005
     Counsel for Defendant Honeywell International, Inc.

**IRENAS,** Senior District Judge:

Plaintiff-Relator Deanna Zelenka ("Zelenka") filed the instant *qui tam* action against Defendants NFI Industries, Inc. ("NFI Industries"), and Honeywell International, Inc. ("Honeywell"), alleging that they violated the False Claims Act, 31 U.S.C. §§ 3729-33, in submitting various certifications and other documents connected to their participation in the Customs and Trade Protection Against Terrorism ("C-TPAT") program of the United States Custom and Border Protection Agency within the Department of Homeland Security ("CBP").  Presently before the Court are the Motions to Dismiss of NFI Industries and Honeywell.

**I.**

Zelenka was hired by NFI Contract Manufacturing, LLC, doing business as NFI Hazmat, LLC ("NFICM"), in or about November, 2002, to run the operations of NFICM's manufacturing and warehousing business.  Zelenka contends that NFICM is one of the "five core companies" comprising Defendant NFI Industries, which "hold themselves out to be a 'family of companies'" and maintain an office in Cherry Hill, New Jersey.  (Compl. at ¶ 2)  She contends that this family includes:  (1) NFI Contract Manufacturing; (2) National Distribution Centers, L.P.; (3) NFI Interactive; (4) NFI Trucking; and (5) NFI Real Estate (collectively the "NFI

Companies").[1]

At some point in or about 2002, NFI entered into an agreement with Honeywell to consolidate Honeywell's warehousing of certain chemical products and hazardous materials in the northeast United States to one facility in Pennsauken, New Jersey, owned or leased by one or more of the NFI Companies ("Pennsauken Facility"). Zelenka contends that when she started working for NFICM, "[s]ubstantial work was necessary in order to make the Pennsauken Facility compliant with all applicable local building and construction codes." (Compl. at ¶ 7) She further alleges that the Pennsauken Facility was "not ready" to store the chemical products and hazardous materials being transferred by Honeywell to the facility. (Compl. at ¶ 8)

Zelenka maintains that she informed NFI executives that the Pennsauken Facility was understaffed, not in compliance with the applicable codes and standards, and was being used to store corrosive, toxic, flammable and combustible materials, some of which could be used to make chemical weapons. She contends that NFI safety chief Paul Abrams, NFI head of security Willard Graham, and NFI vice president of risk management Craig Bollinger "acknowledged to Zelenka the misrepresentations that NFI was

---

[1]The Complaint refers to these businesses interchangeably or collectively as "NFI." The Court will adopt this designation for the purposes of this Opinion when it cannot determine which company is referred to in the Complaint.

engaging in." (Compl. at ¶ 11)

Honeywell applied for and was approved for participation in the C-TPAT program for its Pennsauken Facility operations. The C-TPAT program is a "voluntary government-business initiative to build cooperative relationships that strengthen and improve overall international supply chain and U.S. border security." Customs-Trade Partnership Against Terrorism (C-TPAT): Partnership to Secure the Supply Chain, http://www.cbp.gov/xp/cgov/import/commercial_enforcement/ctpat/ (last visited June 27, 2006). Companies that engage in the importation, transportation and coordination of commercial import cargo into the United States are eligible for the program. In conjunction with an application to participate in C-TPAT, a company must conduct a comprehensive self-assessment of its security procedures using guidelines developed by the CBP and the trade community. Companies that participate in C-TPAT receive certain benefits for complying with the C-TPAT guidelines, including fewer inspections by CBP and reduced border wait times, and reduced selection rates for Compliance Measurement Examinations.

Zelenka contends that Honeywell and NFI Industries knowingly and falsely certified that the Pennsauken Facility met the C-TPAT requirements for procedural, physical and personnel security, education and training, access controls, manifest procedures and conveyance security. She alleges that one of the buildings at the

Pennsauken facility had local building approval only for the storage of corrosive and toxic materials, but not for the flammable and combustible materials that were also stored there. Zelenka further maintains that NFI did not file a required Spill Containment Countermeasures Plan with the Environmental Protection Agency. As a result of these misrepresentations and failures, Zelenka contends that Honeywell and NFI Industries have received certain benefits from the C-TPAT program and avoided the payment of fines, fees and other costs to the government.

Zelenka filed the instant Complaint on January 28, 2005, pursuant to 31 U.S.C. § 3730(b)(1), which permits a private person to bring a civil action in the name of the United States Government for violation of the False Claims Act. On December 7, 2005, the United States filed a Notice of Election to Decline Intervention pursuant to § 3730(b)(4).

**II.**

Rule 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court will accept the allegations of the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although the court must assume as true all facts alleged, "[i]t is not . . . proper to assume that the [plaintiff] can prove any facts it has not alleged." *Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Finally, when "[c]onfronted with [a 12(b)(6)] motion, the court must review the allegations of fact contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Pennsylvania v. Pepsico, Inc.,* 836 F.2d 173, 179 (3d Cir. 1988).

### III.

Zelenka contends that the submission of various certifications to CBP by Honeywell and NFI Industries that the Pennsauken Facility met the C-TPAT guidelines constitutes a "reverse false claim" in violation of 31 U.S.C. § 3729(a)(7), because Honeywell's participation in the C-TPAT program entitled it to certain benefits, including fewer inspections and thus, fewer inspections fees. The False Claims Act provides that a party may be liable for making a "reverse false claim" if he or she "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation

6

to pay or transmit money or property to the Government. . . ."[2] § 3729(a)(7); *see also Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 185 (3d Cir. 2001). The statute does not define the term "obligation."

Honeywell and NFI Industries argue that Zelenka has not alleged that there is any legal obligation to pay or transmit money that Honeywell could have avoided, concealed or decreased through its statements made in conjunction with the C-TPAT program.[3] *See U.S. ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432, 444 (3d Cir. 2004)(holding that a "prerequisite for liability under [the reverse false claim] theory is a legal obligation" to "pay . . . to the government money or property").

Zelenka alleges that Honeywell avoided obligations to pay the Government through several benefits provided to participating C-TPAT companies, including: "(i) reduced number of inspections and inspection fees[;] (ii) reduced selection rates for compliance measurement exams[;] and (iii) receipt of targeting benefits by

---

[2] Zelenka contends that NFI Industries violated the False Claims Act by knowingly causing Honeywell to make or use a false record or statement to avoid an obligation to pay the CBP inspection fees. (Compl. at ¶ 30)

[3] Honeywell denies that it made any false statements as part of the C-TPAT application or program. It also seeks to have the Complaint dismissed pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity, contending that Zelenka has not specified any particular false statements made by Honeywell, which obligations were avoided by these allegedly false statements, the amount of the obligations, or when these obligations were avoided.

receiving a 'credit' through the CBP Targeting system." (Compl. at ¶ 26) The Court interprets this allegation to state that Honeywell used false statements to secure its participation in C-TPAT. As a result of its participation in C-TPAT, fewer of Honeywell's shipments into the United States were inspected by CBP than would have been had it not taken part in C-TPAT, and thus it paid fewer inspection fees than it would have, had it not been a C-TPAT participant.

The Court notes, and Zelenka does not contest, that Honeywell is under no present obligation to pay fees for inspections that have not occurred. This case thus turns on whether an obligation for the purposes of § 3729(a)(7) encompasses a potential or contingent obligation, such as a fee that would be assessed upon the occurrence of a possible future event. The Third Circuit has not yet squarely addressed this issue, although *Quinn* provides a helpful starting point in its requirement of a "legal obligation" that is "clear." 382 F.3d at 444, 445.

Other courts have defined the scope of the term obligation in § 3729(a)(7) to preclude a claim based upon potential or contingent obligations. In *United States v. Q Int'l Courier, Inc.* ("*Quick*"), the Eighth Circuit held that:

> To recover under the False Claims Act, we believe that the United States must demonstrate that it was owed a specific, legal obligation at the time that the alleged false record or statement was made, used or caused to be made or used. The obligation cannot be merely a potential liability: instead, in order to be subject to

>    the penalties of the False Claims Act, a defendant must
>    have had a present duty to pay money or property that
>    was created by a statute, regulation, contract,
>    judgment, or acknowledgment of indebtedness.  The duty,
>    in other words, must have been an obligation in the
>    nature of those that gave rise to actions of debt at
>    common law for money or things owed.

131 F.3d 770, 773 (8th Cir. 1997).

This emphasis on a present duty to pay is echoed by the Sixth Circuit in *American Textile Manufacturers Institute, Inc., v. The Limited, Inc.* ("*ATMI*"), which holds that "[c]ontingent obligations—those that will arise only after the exercise of discretion by government actors—are not contemplated by the [False Claims Act]."  190 F.3d 729, 738 (6th Cir. 1999).  "[A] reverse false claim action cannot proceed without proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation sufficiently certain to give rise to an action of debt at common law."  *Id.* at 736.  It is clear that Honeywell is not obliged to pay inspection fees until CBP chooses to inspect its shipments.  While it may be likely that these inspections would occur, Honeywell's obligation to pay fees for future inspections is not "sufficiently certain" at this time.

Zelenka argues that the Fifth Circuit suggested that the decisions of the Sixth and Eighth Circuits unduly narrow the scope of the term obligation.  *See U.S. ex. rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648 (5th Cir. 2004).  While *Bain* did not expressly adopt the standard of *Quick* and *ATMI*, it did not employ a

9

definition of obligation that is any more favorable to Zelenka's claim here:

> It is clear to us that, as the government argues, the reverse false claims act does *not* extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) and which do not arise out of an economic relationship between the government and the defendant (such as a lease or a contract or the like) under which the government provides some benefit to the defendant wholly or partially *in exchange* for an agreed or expected payment or transfer of property by (or on behalf of) the defendant to (or for the economic benefit of) the government.

386 F.3d at 657 (emphasis in original). Honeywell has no obligation to pay inspection fees for inspections that have not occurred, nor does the obligation to pay any such fees arise out of an economic or contractual relationship with the government.

That the False Claims Act would not encompass a claim such as brought here is underscored by the difficulty this Court would face in determining the amount of any judgment. While Zelenka is not required to precisely quantify the amount of the false claim prior to bringing her action, there is no way for the Court to quantify, even imprecisely, the amount Honeywell would owe the CBP if she were to succeed here. The Court has no way of knowing how many times Honeywell has or will escape inspection as a C-TPAT participant. Moreover, the system of CBP inspection fees and duties is lengthy and complex. *See generally* 19 C.F.R. §§ 0-360. Zelenka is unable to point to any particular statutory or

regulatory provision specifying the amount of fees that Honeywell has allegedly avoided.[4]

In this case, Honeywell's obligation to pay inspection fees has and always will be contingent on CBP choosing to inspect its shipments. The Court need not specifically define the term obligation here,[5] as Zelenka's allegations do not fit within even the bare guideline of *Quinn* that, for the purposes § 3729(a)(7), a plaintiff must allege a "legal obligation" that is "clear."[6] 382 F.3d at 444, 445.

---

[4]Zelenka cites 19 U.S.C. § 58c in her brief, however, this section does not set fees for inspections of imported products.

[5]Zelenka argues that the definitions of the term proposed by other courts are based on a misreading of the legislative history of § 3729(a)(7), and that the provision should be interpreted as reaching "all types of fraud, without qualification, that might result in financial loss to the Government." S. Rep. No. 345, at 19 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5284. The District Court for the District of Maine aptly rejected this reading of the legislative history, citing the legislative history's references to "money owed," *id.* at 15, 18, and noting that the definition proposed by Zelenka "would seem to be as broad as any lawyer's creative impulses in defining a possible claim in the first place." *U.S. ex. rel. S. Prawer & Co. v. Verrill & Dana*, 946 F. Supp. 87, 94 n. 13, 95 (D. Me. 1996).

[6]In light of this ruling, the Court need not address Honeywell's argument that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity or NFI Industries' contention that it is not a proper party to this litigation.

**IV.**

For the reasons set forth above, the Court will grant the Motions to Dismiss of Defendants Honeywell and NFI Industries. The Court will enter an appropriate order.

Date: July  6th , 2006

 s/ *Joseph E. Irenas*
JOSEPH E. IRENAS
Senior United States District Judge